No. 21-20555

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

JOHN DOE,
*Plaintiff-Appellant,*

v.

WILLIAM MARSH RICE UNIVERSITY,
DOING BUSINESS AS RICE UNIVERSITY,
*Defendant-Appellee.*

---

On Appeal from United States District Court
For the Southern District of Texas, Houston Division
Civil Action No. 4:20-cv-02985

---

**BRIEF OF APPELLEE
WILLIAM MARSH RICE UNIVERSITY**

---

Russell Hardin, Jr.
Emily M. Smith
RUSTY HARDIN & ASSOCIATES, L.L.P.
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
(713) 652-9000 Phone
rhardin@rustyhardin.com
esmith@rustyhardin.com
COUNSEL FOR DEFENDANT-APPELLEE

No. 21-20555

# In the
# United States Court of Appeals
# for the Fifth Circuit

JOHN DOE,
*Plaintiff-Appellant,*

v.

WILLIAM MARSH RICE UNIVERSITY,
DOING BUSINESS AS RICE UNIVERSITY,
*Defendant-Appellee.*

On Appeal from United States District Court
For the Southern District of Texas, Houston Division
Civil Action No. 4:20-cv-02985

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Defendant-Appellee: | Counsel for Defendant-Appellee: |
|---|---|
| William Marsh Rice University | Russell Hardin, Jr.<br>Emily Smith<br>RUSTY HARDIN & ASSOCIATES, L.L.P.<br>5 Houston Center<br>1401 McKinney Street, Suite 2250<br>Houston, Texas 77010 |

| Plaintiff-Appellant: | Counsel for Plaintiff-Appellant: |
|---|---|
| John Doe | Susan Hutchison<br>HUTCHISON & FOREMAN, P.L.L.C.<br>500 East 4th Street, Suite 100<br>Fort Worth, Texas 76102 |

| Trial Court Judges: | |
|---|---|
| The Honorable Amos L. Mazzant, III | United States District Judge for the Eastern District of Texas – Sherman Division |
| The Honorable Vanessa D. Gilmore | United States District Judge for the Southern District of Texas – Houston Division |
| The Honorable Alfred H. Bennett | United States District Judge for the Southern District of Texas – Houston Division |

/s/ Emily M. Smith
Emily M Smith

**STATEMENT REGARDING ORAL ARGUMENT**

Because this case does not concern complex or novel questions of law and the applicable principles are well-established, oral argument is unnecessary to aid the Court's decisional process.

## Table of Contents

**PAGE**

Certificate of Interested Parties.......................................................... i

Statement Regarding Oral Argument............................................... iii

Table of Contents............................................................................. iv

Table of Authorities......................................................................... vi

Issues Presented............................................................................... 2

Statement of The Case..................................................................... 3

Summary of the Argument............................................................... 10

Argument.......................................................................................... 11

I.    Doe Cannot Establish a Material Fact Issue Under
      Any Title IX Theory.............................................................. 11

      A.    Doe Cannot Establish a Material Fact Issue Under
            The Erroneous Outcome Theory....................................... 11

                  i.    The University's Result was Correct...................... 12

                  ii.   The University was not Motivated
                        by Gender Bias........................................................ 14

      B.    Doe Cannot Establish a Material Fact Issue Under
            The Selective Enforcement Theory................................... 18

      C.    Doe Cannot Establish a Material Fact Issue Under
            the Archaic Assumption Theory....................................... 20

II.   Doe Cannot Establish a Material Fact Issue Under
      His Breach of Contract Claim................................................ 22

**PAGE**

III.    Doe Cannot Establish Damages Under Any Claim ..................    24

Conclusion ....................................................................................    26

Certificate of Service ....................................................................    27

Certificate of Compliance ..........................................................    28

# TABLE OF AUTHORITIES

**CASES:**                                                                                          **PAGE**

*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994)................................................................... 23

*Davis v. Chevron U.S.A., Inc.*,
14 F.3d 1082 (5th Cir. 1994).................................................................. 15

*Doe v. Purdue Univ.*,
928 F.3d 652 (7th Cir. 2019)................................................................. 14

*Doe v. Univ. of Tex. Health Sci. Ctr. at Houston*,
No. CV H-21-1439, 2021 WL 5882625
(S.D. Tex. Dec. 13, 2021)................................................................. 17, 18

*Klocke v. University of Texas at Arlington*,
938 F.3d 204 (5th Cir. 2019)................................................... 14, 17, 18

*Law v. William Marsh Rice Univ.*,
123 S.W.3d 786 (Tex. App.—Houston [14th Dist.]
2003, pet. denied).................................................................... 23

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*,
25 F.4th 360 (5th Cir. 2022)................................................................. 23

*Norris v. P.A.M. Transp., Inc.*,
No. 1:16-CV-471, 2017 WL 3671366
(E.D. Tex. Aug. 10, 2017).................................................................... 25

*Pacheco v. St. Mary's Univ.*,
No. 15-CV-1131 (RCL), 2017 WL 2670758
(W.D. Tex. June 20, 2017)............................................................... 15, 19

*Pederson v. La. State Univ.*,
213 F.3d 858 (5th Cir. 2000)............................................................. 20, 22

*Plummer v. Univ. of Houston*,
860 F.3d 767 (5th Cir. 2017)................................................................. 19

**PAGE**

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994)..................................................... 11, 12

**STATUTES:**

Title VII of the Civil Rights Act of 1964............................................ 15

Title IX of the Education Amendments of 1972,
20 U.S.C. §1681 *et. seq.* ......................................................... *passim*

**RULES:**

FED. R. CIV. P. 26.................................................................. 25

FED. R. APP. P. 32................................................................. 28

5th CIR. R. 28.2.1................................................................. i

5th CIR. R. 32.1................................................................... 28

No. 21-20555

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

JOHN DOE,
*Plaintiff-Appellant,*

v.

WILLIAM MARSH RICE UNIVERSITY,
DOING BUSINESS AS RICE UNIVERSITY,
*Defendant-Appellee.*

---

On Appeal from United States District Court
For the Southern District of Texas, Houston Division
Civil Action No. 4:20-cv-02985

---

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

This appeal concerns the adjudication and punishment of Plaintiff John Doe ("Doe" or "Plaintiff" or "Plaintiff-Appellant") by William Marsh Rice University (the "University" or "Defendant-Appellee") after serious allegations of misconduct were raised against Doe by a fellow student, Jane Roe ("Roe"). The University conducted a fair and impartial investigation of Doe and ultimately issued a sanction in compliance with the gender-neutral procedures set forth in the University's Student Code of Conduct and the law. Doe has not raised a material fact issue to

show otherwise, and the district court's ruling should be affirmed.

## ISSUES PRESENTED

In the lower court, the University moved for summary judgment on each of Doe's claims. ROA.454-471. The district court granted the University's motion in whole and rendered a final judgment. ROA.702-729; ROA.730. The issues in this appeal therefore are as follows:

1.     Whether Defendant-Appellee is entitled to judgment as a matter of law that the University had a reasonable, non-discriminatory reason to sanction Doe as the carrier of an incurable sexually transmitted disease when he could have adequately disclosed those facts before having unprotected sex with a new partner, but he admittedly did not.

2.     Whether Defendant-Appellee is entitled to judgment as a matter of law when there is no evidence that the University treated a similarly situated female differently than Doe.

3.     Whether Defendant-Appellee is entitled to judgment as a matter of law when there is no evidence that the University treats men and women differently, let alone based on outmoded and archaic assumptions about their roles and abilities.

4.     Whether Defendant-Appellee is entitled to judgment as a matter of law when there is no evidence that the University breached any contract during its investigation and adjudication of Doe.

5.    Whether Defendant-Appellee is entitled to judgment as a matter of law when Doe failed to present evidence of any damages arising from his claims.

## STATEMENT OF THE CASE

In the Fall 2017, John Doe ("Doe" or "Plaintiff" or "Plaintiff-Appellant") was a freshman at William Marsh Rice University (the "University"), on a football scholarship. ROA.25–26. In high school, Doe had been diagnosed with herpes, an incurable sexually transmitted disease. ROA.26. Later in college, Doe met Jane Roe ("Roe"), also a Rice student, and engaged in multiple, consensual, unprotected sexual encounters with her. ROA.26. By early December 2017, Roe and Doe ended their relationship the day after engaging in one final sexual encounter. ROA.27.

On December 14, 2017, Roe texted Doe. Roe informed Doe that she had been diagnosed with herpes or HSV-1. ROA.1236-1242. Doe and Roe discussed Doe's herpes status and the life-long implications of contracting herpes. ROA.1236-1242. Roe informed Plaintiff that she believed she contracted herpes from him. ROA.1238. Doe confirmed that he contracted herpes "a long time ago." ROA.1239. Doe also responded "Yes" when asked if he had known he "had herpes this entire time and [Doe] didn't tell [Roe] until now." ROA.1240.

The next day, December 15, 2017, Roe contacted the University's Title IX office and alleged that she became infected with herpes after having a consensual sexual encounter with Doe. *See* ROA.1227. Roe ultimately filed criminal charges

3

against Doe for assault, ROA.1228-1229, which the Rice University Police Department declined, ROA.1231, as well as a complaint against Doe through the University's Student Judicial Programs ("SJP"), ROA.1235-1243; ROA.1244.

The day after receiving Roe's formal written complaint against Plaintiff, SJP Associate Director Emily Garza ("Garza") emailed Plaintiff forbidding him to contact Roe and scheduling a February 14, 2018 meeting with him to discuss "a disciplinary matter." ROA.1245. On the day of the scheduled meeting, Plaintiff's then-attorney, Brett Podolsky called Garza and informed her that Plaintiff would not be attending the meeting that day. *See* ROA.1247. SJP responded that it only communicates with students directly. *See* ROA.1247. Doe himself then sent Garza an email asking to reschedule the meeting. ROA.1246.

That same day, February 14, 2018, the University's Associate Dean of Undergraduates Donald Ostdiek ("Dean Ostdiek") sent Plaintiff a letter notifying him that he was being placed on immediate interim suspension pursuant to the University's Code of Student Conduct ("Code") Sections I.E.l and I.E.2, in order to "ensure the safety and wellbeing of members of the University community."[1] ROA.1251-1252.

---

[1] Doe's academic access was restored approximately two weeks later, on March 7, 2018, when he began to meaningfully and personally engaged in the process. ROA.1330.

4

Also on the same day, Garza sent a charge letter to Plaintiff (1) notifying him of the disciplinary charges filed against him under the Code, (2) summarizing the allegations made against him by Roe, and (3) explaining the University's next steps.  ROA.1247-1250.  In the charge letter, Garza indicated that she was investigating whether Doe violated Code Section II.B.l.a, which prohibits "intentionally inflicting or attempting to inflict mental or bodily harm on any person . . . [or] taking reckless disregard, from which mental or bodily harm could result to any person."  ROA.1249; ROA.1261.  Garza also expressed concern that his conduct "may qualify as 'dating violence'" under the University's Sexual Misconduct Policy.  ROA.1249.  Plaintiff was informed that he had a right to schedule a review of the SJP disciplinary file as well as that he had until February 21, 2018, to respond to the charge letter.  ROA.1249.  SJP later unilaterally extended his deadline until noon, March 5, 2018.  ROA.1221-1222.

Doe finally contacted SJP on the date of his deadline, March 5, to arrange review of the disciplinary file, and to request a further extension of his response until the next day, March 6, 2018.  ROA.1222; ROA.1323.

In his March 6, 2018 response, Plaintiff admitted he was diagnosed with the HSV-1 type of herpes in high school and alleged telling Doe he had a "run-in" with herpes in high school.  ROA.1326.  Plaintiff also alleged that Roe may have contracted herpes prior to engaging in sexual relations with Doe.  *See*

5

ROA.1327.  Doe never complained to SJP that Roe violated the Code by failing

to inform him of her sexual history or medical status, nor did any other student

ever file a complaint against Roe alleging any similar violation of the Code.  *See*

ROA.459.

On March 21, 2018, Plaintiff met with Garza to discuss his relationship with

Roe.  *See* ROA.1357.  He admitted telling Roe that he had a "run-in with herpes" in

high school, but that "[t]he conversation wasn't deep or graphic, and it was brief."

ROA.1357 (quoting Doe).  Neither Doe nor Roe recalled any further details about

the conversation, including any discussion related to the ramifications of the disease

or the risk to a partner when engaging in unprotected sex with a carrier of the disease.

ROA.1357.  Garza also clarified Doe's understanding of herpes at the time of his

December 14, 2017 text conversation with Roe.  ROA.1359.  Plaintiff agreed that

he understood at that time that herpes is an incurable disease as well as that a carrier

of HSV-1 will always be a carrier of the disease.  ROA.1359.

Doe and Roe were given the opportunity to review all the evidence included

in SJP's casefile, including audio recordings of interviews, and to supplement the

file.  ROA.1223-1224; ROA.1225.  Doe reviewed the file five separate times.

ROA.1224.  On April 9, Garza informed Doe and Roe that SJP had completed its

investigation.  ROA.1225; ROA.1355.  Garza gave each student the opportunity to

supplement the file until April 13.  ROA.1225; ROA.1355.

On April 17, 2018, SJP issued a decision letter summarizing the investigation, evidence, conclusions, and the parties' conflicting statements.  ROA.1356-1363. SJP determined that, more likely than not, Doe failed to "adequately notify" Roe of the fact that she was at risk of contracting HSV-1 from him if they engaged in unprotected sex.  ROA.1356-1357.  Doe's failure to clearly disclose this information to Roe, and then to subsequently engage in unprotected sex, was a reckless action from which mental or bodily harm could result to another person, a violation of Code Section II.B.1.a.  ROA.1356-1357.  Doe's actions did not constitute dating violence. ROA.1357.

In reaching its conclusions, SJP considered inconsistencies in Roe's statements to SJP and the Rice University Police Department, but concluded that these statements did not change the relevant undisputed facts, including that (1) Doe knew he had an incurable sexually transmitted disease prior to becoming intimate with Roe, (2) Doe's discussion with Roe about that incurable disease, in Doe's own words, "wasn't deep or graphic," but "brief," and (3) Doe never disclosed the implications and lifelong effects of HSV-1 or the risks associated with unprotected sex.  *See* ROA.1356-1363.  Doe's actions, in short, did not comply with Rice's "high expectations of civility and respect for others placed on all Rice students" as described in the Code.  ROA.1361.

Plaintiff was not expelled or suspended, but disciplined with "rustication." ROA.1362. Rustication permitted Doe to be on campus for academic purposes, and for other purposes with prior permission. ROA.1362. SJP's decision did not affect Doe's scholarship or status with the football team. *See* ROA.1362. After 14 months, Doe could petition SJP to lift his rustication, and return to normal campus life. ROA.1362.

Plaintiff appealed, arguing that Roe gave conflicting testimony and "no reasonable trier of fact would find" Roe "credible or sustain [Doe's] charges". *See* ROA.1364-1367. Plaintiff asserted the SJP was biased in favor of Roe, and that the University failed to hold Roe responsible for her "reckless" behavior. ROA.1366-1367. Plaintiff also alleged that Garza failed to interview a third student who allegedly told Doe that he contracted herpes from Roe. ROA.1366.

On May 4, 2018, the University's Dean of Undergraduates, John Hutchinson ("Dean Hutchinson") sustained Doe's violation of Section II.B.1.a and the resulting disciplinary sanction. ROA.1368-1370. Dean Hutchinson found Plaintiff's appeal failed to present any evidence of bias and that Doe's complaints about Roe's credibility did not cast doubt on SJP's decision. Roe's actions did not affect whether *Plaintiff* provided Roe with "appropriate, necessary, and timely information" about his herpes diagnoses prior to engaging in sexual contact. *See* ROA.1368; *see also* ROA.1369-1370. "[A]s the carrier

8

of the infection, [Plaintiff] bore the responsibility for the safety of any and all sexual partners with whom [he] engage[s]." ROA.1369. Doe's admittedly "brief disclosure" to Roe "failed that responsibility." ROA.1369.

On July 16, 2018, Plaintiff voluntarily withdrew from the University. ROA.1371.

In 2019, Plaintiff filed a complaint in the Eastern District of Texas alleging the University, Garza, and Dean Ostdiek violated Title IX of the Education Amendment Act of 1972 by investigating Doe and adjudicating a punishment against him in a way that was discriminatorily biased against him as a male. ROA.12; ROA.35-41. Doe also brought a state law breach of contract action against the University only. ROA.41-43.

Doe later dismissed the individual defendants, Garza and Dean Ostdiek, ROA.290-292; ROA.293, and on the University's motion to dismiss for improper venue, or alternatively to transfer venue, ROA.79-107, the case was transferred to the Southern District of Texas. *See* ROA.340-352. The University then filed for summary judgment on each of Doe's claims, ROA.454-471, and the district court granted that motion in whole. ROA.702-729. A final judgment was issued on September 16, 2021. ROA.730. Doe now appeals that ruling.

## SUMMARY OF THE ARGUMENT

Doe's claims under Title IX and for breach of contract fail as a matter of law because the investigation and adjudication of his alleged misconduct by the University were gender neutral. The University disciplined Doe based on his own admission that he insufficiently disclosed his known, incurable sexually transmitted disease and the implications of unprotected sex to Jane Roe—a fellow University student—in violation of the University's Student Code of Conduct.

Doe alleges without evidence that the University employed archaic notions of the roles of men and women to selectively enforce policies against him, leading to an investigation and adjudication that were a "sham," ROA.38, motivated by "anti-male discriminatory bias," ROA.18, resulting in an erroneous outcome. To prove his theories, Doe largely relies on character assignation of his accuser, Roe. He argues that the University believed her over him and ultimately punished him rather than her *solely* because of his gender.

Doe's arguments fail under every theory, as the evidence in the record raises no inference of gender discrimination, nor a violation of any contractual relationship between the parties. There is no dispute that Doe did not disclose the ramifications of an illness that he knew he had and that he knew to be incurable. It is this evidence that led the University to conclude that he failed to "adequately notify" Roe of the risks of contracting herpes. ROA.1356-1357. Roe's sexual history and credibility

10

do not alter this conclusion nor is Roe's treatment by the University relevant, as no one (including Doe) ever accused her of similar conduct.  It is Doe's own admissions that proved the recklessness of his actions.  The district court's ruling should be affirmed.

**ARGUMENT**

## I.     DOE CANNOT ESTABLISH A MATERIAL FACT ISSUE UNDER ANY TITLE IX THEORY

Doe's Title IX claim is based on three separate theories: (1) an erroneous outcome of his disciplinary proceeding; (2) selective enforcement of the University's procedures based on his gender; and (3) differential treatment based on the University's archaic assumptions about the roles and behavior of men and women. ROA.35-41; Doe Br. 30.[2]  Doe fails to raise a material fact issue under any theory.

### A.     Doe Cannot Establish a Material Fact Issue Under the Erroneous Outcome Theory

An "erroneous outcome" Title IX claim requires that Doe show both (1) an erroneous outcome and (2) that "gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  In other words, there must be a causal connection between the flawed result and the alleged gender bias, as shown by "particular evidentiary weaknesses behind the finding"

---

[2]     Citations to Plaintiff-Appellant's Brief are to the original page numbers, as provided at the bottom of page.

such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*

### i.     The University's Result was Correct

First, Doe cannot establish a flaw in the University's decision that he engaged in "a reckless action from which mental or bodily harm could result to another person." ROA.1356-1357. Doe admitted in a text message exchange with Roe that he did not adequately inform Roe of his known herpes status or inform her of the risks and consequences of unprotected sex. ROA.1236-1242. Indeed, when Roe asked him: "so you know you've had herpes this entire time and you did not tell me until now[?]" Doe answered, "yes." ROA.1240. Doe then apologized to Roe. ROA.1241.

Doe attempts to explain away his affirmative response in his brief. Doe Br. 40-41. Yet Doe later corroborated these texts in a face-to-face meeting with Garza where Garza explicitly asked Doe to explain his exchange with Roe. *See* ROA.1359. To Garza, Doe admitted to knowing he had herpes at the time of his sexual encounters with Roe, to knowing it was a lifelong, "incurable" disease at that time, and to not fully disclosing this information to Roe. *See* ROA.1359. In Doe's words, their conversation about his incurable sexually transmitted disease "wasn't deep or graphic" but "brief." ROA.1361. Both he and Roe described the extent of Doe's

disclosure about his illness as simply a "run-in" he had in high school. *See* ROA.1361; ROA.1237; ROA.1326; Doe Br. 40.

Doe complains the University's finding of recklessness ignored his candor, as even Roe herself admitted that Doe *did* inform her of his herpes status. *See, e.g.*, Doe Br. 32. What Doe fails to appreciate is that he was not found reckless for failing to disclose his status at all, but for failing to "*adequately notify*" Roe of the risks of that disease, or even to make her aware of his continuing illness. *See* ROA.1356-1357 ("The information available to me supports a finding, more likely than not, that you failed to adequately notify [Doe] of the fact that she was at risk of contracting HSV-1 from you if the two of you engaged in unprotected sex."); ROA.1368 (noting the dispute is whether Doe provided Roe "appropriate, necessary, and timely information about [his] infection prior to engaging in sexual contact with her."). Disclosing his "run-in" with herpes in high school does not suggest the ongoing, infectious disease that Doe knew he had or that Roe risked infection if she engaged in unprotected sex with Doe. *See* ROA.1356-1357 ("Your failure to clearly disclose this information to a sexual partner, and then subsequently engage in unprotected sex, was a reckless action from which mental or bodily harm could result to another person.").

Doe also incorrectly contends that the University did not consider Roe's credibility. *See* Doe Br. 32-41. In fact, both the SJP decision letter *and* Dean

Hutchison's appellate decision letter discussed Roe's testimony and considered her credibility in relation to the charges against Doe. *See* ROA.1359-1362; ROA.1368 ("It is not in dispute that you knew you had HSV prior to engaging in sexual contact with [Roe]. This is evidenced by your own statements, so [Roe's] credibility does not relate to this finding of fact."). Because Doe himself established what he had (and had not) disclosed to Roe, Roe's inconsistencies, motives, and bad memory were irrelevant.[3] Doe's own statements show that the University's finding of recklessness was not in error.

### ii.     The University Was Not Motivated by Gender Bias

Doe also cannot establish the second prong of this claim, as there were reasonable, nondiscriminatory reasons for the University's investigation and findings, and no evidence that Doe's gender influenced the University's conduct. *See Klocke v. University of Texas at Arlington*, 938 F.3d 204, 211–12 (5th Cir. 2019) (finding a reasonable, non-discriminatory reason for university's investigation and findings, and concluding gender bias in these circumstances would be

---

[3] Doe's case is very different from the case he cites, *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019). Doe Br. 32. *Purdue* is a classic "he said/she said" matter where the school had to decide whether to believe John or Jane. Here, the University only had to consider Doe's statements to determine whether he violated its Code. *See* ROA.1369 (noting Doe's texts, "[t]aken alone", established with "high probability" that Doe knew he had HSV and that he did not adequately disclose this information and the consequential risks to Roe. "By Rice's standards this constitutes reckless disregard.").

"speculative"); *Pacheco v. St. Mary's Univ.*, No. 15-CV-1131 (RCL), 2017 WL 2670758, at \*16 (W.D. Tex. June 20, 2017) (rejecting gender bias in a disciplinary proceeding where the male student could not point to any evidence suggesting the university's decision was based on his gender, or that the outcome was flawed. The evidence showed the decision was made by "reviewing the statements and weighing the witnesses' credibility.").[4]

Doe's primary "evidence" of gender bias is Roe, her character, and her credibility. *See* Doe Br. 41-44. He speculates that the University disbelieved his story in favor of Roe because Roe is a woman. *See* Doe Br. 41. Yet, the record shows that the University disregarded Roe's inconsistencies because they were irrelevant in light of the other available evidence—namely, Doe's own confessions. *See* ROA.1356-1363; ROA.1368-1370.

Doe's next assumption is equally flawed, as it too is based on a misunderstanding of the facts. He contends that while he was punished for his behavior, Roe escape sanction for similar conduct, again solely because she is a woman. Doe Br. 43-44. But Doe's analogy assumes that he and Roe were similarly situated. In reality, there is no evidence that anyone ever made a written complaint

---

[4] In the Title VII context, once a defendant provides a "legitimate, nondiscriminatory reason for its decision," the burden shifts to the plaintiff to show that the reason is pretextual. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994).

against Roe alleging the same conduct. Without a written complaint, there was no cause for SJP to investigate Roe, no rationale for SJP to sanction her for her conduct, and no legal relevance to her disparate treatment.

Recognizing this flaw in his argument, Doe (for the first time on appeal) attempts to characterize his response to Roe's allegations as itself a "written complaint." Doe Br. 42. This too fails. In it, Doe does not allege that he received herpes from Roe, that Roe knew she had herpes at the time of their sexual encounters, nor any other potentially reckless behavior that caused (or could have caused harm) to Doe. ROA.1326-1329. Doe's response is more accurately characterized as an attempt to mitigate his own guilt by pointing to a third student and speculating that Roe may have contracted herpes prior to Doe's encounter with her. ROA.1327. There remains no evidence that this third student (or anyone else) ever made a complaint to SJP or that Doe's unsubstantiated rumors amount to a "written report" sufficient for SJP to investigate Roe.[5] The record is that Roe filed a report against Doe, that no comparable report was ever filed against Roe, and that the University investigated Doe's conduct because of Roe's report—*not* because Doe is a man.

It is also rank speculation to conclude the University's decision to place Doe (but not Roe) on interim suspension was based on Doe's gender, rather than on non-

---

[5] It is implausible that Doe meant his response to act as a "written complaint" against Roe. Arguing that Roe inadequately disclosed her herpes diagnosis would have effectively conceded the insufficiency of his own disclosures.

discriminatory grounds. *See Doe v. Univ. of Tex. Health Sci. Ctr. at Houston*, No. CV H-21-1439, 2021 WL 5882625, at *10 (S.D. Tex. Dec. 13, 2021) ("In a suit for damages under Title IX, Doe must allege facts to support that [the university's] response was 'clearly unreasonable in light of the known circumstances.'") (quoting *Klocke*, 938 F.3d at 210).

The information available to the University at the time of Doe's temporary suspension indicated that Doe (1) had declined to participate in either the Rice University Police Department investigation or the February 14 SJP meeting, (2) had given no sign that he intended to "change his behavior going forward," and (3) had admitted in the December 14, 2017 text message exchange with Roe that he "knew [he] had the disease before [he] had unprotected sex with [Roe], and . . . admitted to [Roe] that [he] knew."[6]   ROA.1251-1252.   On this evidence, Dean Ostidick's decision to temporarily suspend him to ensure the "safety and wellbeing of the University community" under Code Sections 1.E.1 and 1.E.2 was not clearly unreasonable, nor plainly based on Doe's gender. *See Doe*, 2021 WL 5882625, at *10 (granting summary judgment on erroneous outcome claim where the facts established non-discriminatory reasons for UTHealth's response, "rendering that response not clearly unreasonable in the light of known circumstances.").

---

[6] Conversely, there is no evidence that Roe ever committed a comparable act, that any student filed a written complaint against Roe, or that Roe declined to participate in the SJP process.

Finally, Doe offers no evidence that the University only denies due process to men, or that because of his gender Doe was himself denied access to the normal University's investigative procedures. The University conducted Doe's investigation and adjudication in the same way it does in every case, irrespective of the student's gender.

Appellee is entitled to judgment as a matter of law on Doe's erroneous outcome claim.

### B.    Doe Cannot Establish a Material Fact Issue Under the Selective Enforcement Theory

To establish his selective enforcement claim, Doe must demonstrate that "either punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke*, 938 F.3d at 213.  In this case, the critical question is whether the University treated females more favorably than Doe under nearly identical circumstances. *See id.* (affirming grant of summary judgment on selective enforcement claim where there was no evidence that similarly situated female students were treated more favorably than Klocke); *Doe*, 2021 WL 5882625, at *11 (granting summary judgment on selective enforcement claim where Doe claimed he and his accuser were a similarly situated male and female, but there were material differences between them, namely that while Doe held and waved a firearm, Roe did not).

There is no evidence that the University treated a similarly situated female better than the University treated Doe—*including Roe*, whom Doe again castigates to argue that simply because she is a woman, she escaped sanction for the "same" conduct for which he was punished.  Doe Br. 41-49.

But of course Roe and Doe are not identical, as only Doe—*but not Roe*—was formally accused of failing to adequately disclose his herpes diagnosis.  *See Pacheco*, 2017 WL 2670758, at *18 (rejecting a selective enforcement claim where male plaintiff offered his female accuser as a comparator, but "no students made allegations or complaints of sexual misconduct against [the female accuser], including Pacheco, and no criminal charges were filed against her.").  Rather than her gender, it is the lack of any comparable complaint against Roe that accounts for SJP's decision to sanction Doe, but not Roe.  *See id.* ("[T]he evidence presented shows that Pacheco and complainant were not similarly situated in nearly identical circumstances. While complainant was undoubtedly treated more favorably, the differences between them—most notably the lack of any allegation or complaint of misconduct—account for this disparate treatment."); *see also Plummer v. Univ. of Houston*, 860 F.3d 767, 771 (5th Cir. 2017), as revised (June 26, 2017) (affirming summary judgment on selective enforcement Title IX claim and noting the disciplined male student never submitted a formal complaint against the female student, which is what would have initiated investigative processes against the

female).  In short, Doe cannot establish a selective enforcement claim by comparing his treatment to Roe's and he offers no other proof of gender bias.[7]  Appellee is entitled to judgment as a matter of law on Doe's selective enforcement claim.

### C.     Doe Cannot Establish a Material Fact Issue Under the Archaic Assumptions Theory

Finally, to establish his archaic assumptions claim, Doe must demonstrate that the University's investigation and punishment were based on "outdated attitudes" about men and women's roles, behavior, or abilities.  *See Pederson v. La. State Univ.*, 213 F.3d 858, 879–82 (5th Cir. 2000) (upholding Title IX violation where the evidence overwhelmingly established that LSU assumed that its women students did not want to participate in sports in the same manner and to the same extent as its male students and that LSU's generalizations about its women athletes were broad, systematic, and intentional).

Doe makes essentially two arguments in favor of his archaic assumptions claim, each of which the district court addressed and rejected.  First, he appears to contend that the University imposes a duty on its male students to inform their female sexual partners of the man's incurable sexually transmitted disease, its consequences, and the risks associated with unprotected sexual contact—***not***

---

[7] Doe retreads the argument that he was innocent of the University's charges.  Doe Br. 48.  But of course, he was not innocent, based on his own admissions.  *See* ROA.1236-1242; *see also* ROA.1369.

because the men are knowing carriers of the disease—but because of the University's chauvinist and paternalistic views of men and women.  *See* Roe Br. 49.

This argument is entirely circumstantial, and based solely on the fact that Doe, as a knowing carrier of HSV-1, was investigated and subsequently punished when Roe was not.  Doe points to no other facts, evidence, examples, or statements by the University that support this theory, including any evidence that the University's actions in even this single instance were somehow motivated by Roe and Doe's genders, rather than on the *other* key difference between them—a formal written complaint.  *See* Roe Br. 49-50.

Doe's premise is also incorrect.  He contends that he gave Doe "true information," Roe Br. 49, but that the University's outdated biases alleviated Roe of any responsibility or accountability for her own actions.  Roe Br. 49-50.  Doe's characterization of his disclosure is plainly a stretch, as while the meaning and accuracy of a "run-in" with herpes in high school can be debated, it certainly does not evoke the lifelong, serious illness that Doe knew he had.  And it is not gender discrimination to burden the carrier of an incurable disease with fully informing a sexual partner of that illness and its consequences.

Second, Doe argues that his interim suspension reflects the University's prejudice against his gender, an argument that the district court rejected for "mischaracteriz[ing] the University's decisions and initial investigatory actions."

ROA.725. In truth, Dean Ostdiek placed Doe on interim suspension under Sections 1.E.1 and 1.E.2 of the Code only after finding that Doe posed a risk to the safety and well-being of the University and that, at least thus far, he was choosing not to participate in the investigative process. ROA.1251-1252. There is no evidence that Doe's temporary suspension reflected "systematic, intentional, differential treatment" of men by the University, *see Pederson*, 213 F.3d at 881, or that the University treated Roe more favorably because she is a woman. "[L]egitimate, *nondiscriminatory*" differences between Doe and Roe explain the University's different actions. *Id.* (emphasis added).

Appellee is entitled to judgment as a matter of law on Doe's archaic assumptions claim.

## II. DOE CANNOT ESTABLISH A MATERIAL FACT ISSUE UNDER HIS BREACH OF CONTRACT CLAIM

Doe's contract claim fairs no better than his Title IX allegations as the "failings" that Doe alleges are not actually breaches of anything, including the apparently implied contractual rights that Doe proclaims he was owed. Roe Br. 51. Indeed, it is questionable whether an implied contractual right between students and higher educational institutions even exists in this Circuit, *see* ROA.465-467 (discussing the implied contractual relationship between students and higher educational institutions), and Doe cites no binding authority for this proposition.

In any event, the evidence establishes that Doe was provided all the processes and procedures set forth in the Code.  He was informed of the charges against him, including the underlying factual bases and evidence for those charges, ROA.1247-1250; he was provided an opportunity to respond and present counter-evidence, *see* ROA.1326-1329; ROA.1223-1224; he was allowed access to his "support person" at his discretion, ROA.1222-1224; he was apprised of SJP's decision and its basis, ROA.1356-1363; his interim suspension was reasonably permissible under the Code as was his eventual punishment, ROA.1251-1252; ROA.1253-1300; he was informed of his right to appeal, ROA.1363; he did appeal, ROA.1364-1367; and his appeal was adjudicated in a written ruling where Dean Hutchinson detailed why each alleged point of error failed to warrant overturning SJP's ruling, ROA.1368-1370. In short, he has not established that the University denied him any of the procedures set forth in the Code or otherwise failed to uphold its duty to treat students equally, regardless of their gender, and to conduct a fair and impartial investigation in his case.[8]  *See Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 794 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (rejecting implied and express breach of

---

[8]  Doe does not address a violation of any express contract or a violation of any applicable due process procedural guarantees in his appeal.  These arguments are waived. *See MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360 (5th Cir. 2022) ("[a]n appellant abandons all issues not raised and argued in its *initial* brief on appeal") (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

contract claim in a disciplinary proceeding).  Appellee is entitled to judgment as a matter of law on Doe's breach of contract claim.

## III.   DOE CANNOT ESTABLISH DAMAGES UNDER ANY CLAIM

Though the district court did not reach the issue of damages, ROA.729, nor need this Court, it remains plain that Doe failed to present evidence of any damages allegedly arising from his claims.  Though Doe blithely asserts he suffered "tremendous damages," including "emotional distress . . . anxiety, severe depression, and suicidal ideations, loss of educational and career opportunities, economic injuries and other direct and consequential damages" entitling him to actual damages, attorneys' fees, expenses, and costs, and injunctive relief, he failed to provide evidence for a single category of damages.  ROA.41.  In fact, he produced only 31 documents in this case, none of which contained any evidence of damages— "tremendous" or otherwise.

Doe does not dispute this point, but instead argues a separate, narrower issue: that he is not expected to produce a calculation of punitive damages, mental anguish, or emotional pain and suffering.  Doe Br. 51-52.

This is not the crux of the issue.  It is not merely that Doe failed to provide a calculation of these damages; it is also that he failed to provide evidence of his damages at all despite being ordered to do *both*—produce a calculation and evidence—by the district court.

Specifically, while this case was venued in the Eastern District of Texas, Judge Mazzant's Order Governing Proceedings required that the parties comply fully with Rule 26 and provide "a computation of each category of damages claimed by the disclosing party," FED. R. CIV. P. 26(a)(1)(A)(iii), as well as to actually produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party." ROA.153. The discovery period was "**NOT** an invitation, or authorization, to withhold documents or information required to be disclosed as part of initial mandatory disclosure, under the guise of 'supplementation.'" ROA.154. And **"[a] party that fails to timely disclose such information will not, unless such failure is harmless, be permitted to use such evidence at trial, at a hearing, or in support of a motion**." ROA.153.

Doe fails to address this Order at all and cites no proof that he complied with it or produced damage evidence. For this additional reason, Appellee is entitled to judgment as a matter of law on Doe's claims. *See Norris v. P.A.M. Transp., Inc.*, No. 1:16-CV-471, 2017 WL 3671366, at *4 (E.D. Tex. Aug. 10, 2017) (barring plaintiff from offering any damage evidence at the summary judgment stage where he had failed to do so before close of discovery, and where the court entered a nearly

identical order at the outset requiring timely disclosure of all relevant documents; finding no evidence of damages; and granting summary judgment).

## CONCLUSION

The district court recognized that Doe lacked the basic evidence necessary to support his claims or to create a genuine issue of material fact. This Court should affirm the district's court's ruling.

Respectfully submitted,

*/s/ Emily M. Smith*
RUSSELL HARDIN, JR.
State Bar No. 08972800
Federal I.D. No. 19424
rhardin@rustyhardin.com
EMILY M. SMITH
State Bar No. 24083876
Federal I.D. No. 1890677
esmith@rustyhardin.com

RUSTY HARDIN & ASSOCIATES, L.L.P.
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
(713) 652-9000 Phone
(713) 586-3826 Direct

COUNSEL FOR DEFENDANT-APPELLEE

## CERTIFICATE OF SERVICE

I certify that on March 12, 2022, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Susan Hutchison
HUTCHISON & FOREMAN, P.L.L.C.
500 East 4th Street, Suite 100
Fort Worth, Texas 76102

/s/ Emily M. Smith
Emily M. Smith

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5,785 words, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman font.

3.     It is understood that a material misrepresentation in this certificate may result in the striking of this brief and imposition of sanctions against the undersigned.

/s/ Emily M. Smith
Emily M. Smith